UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EDLAND POLEON,

                              Plaintiff,

vs.                             Case No. 6:14-cv-2034-Orl-40TBS

ESTES EXPRESS LINES, JIM ROSE,
DAVID RUBITO,

                              Defendants.

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Case Management and Scheduling Order (ECF 41) and Local Rule 4.15, Defendants provided Plaintiff with a proposed joint statement of undisputed facts for review and comment by email and overnight mail on April 8, 2016. As of this date, Defendants have received no comment from Plaintiff regarding the proposed joint report. Therefore, Defendants unilaterally, through their counsel, submit the following Defendants' Statement of Undisputed Facts In Support of Defendants' Motion for Summary Judgment.

**JOINT STATEMENT OF UNDISPUTED FACTS**

1.    Defendant, Estes Express Lines ("Estes") has been issued a federal motor carrier license by the Department of Transportation, DOT No. 121018. ("Affidavit of Brenda Gerczak" hereinafter, "Gerczak Aff. ¶ 7").

2.    Estes operates out of terminals located in every state in the country, including one located in Orlando, Florida, where the Plaintiff, Edland Poleon, was previously employed as a dock worker. (Gerczak Aff. ¶ 8).

3. Defendant Jim Rhodes was terminal manager of the Orlando terminal for a portion of the time Plaintiff was employed by Estes. ("Deposition Testimony of Edland Poleon" hereinafter, "Poleon Dep. p. 61, ln. 8-13").

4. Defendant David Rubito was the assistant terminal manager of the Orlando terminal for a portion of the time Plaintiff was employed by Estes. (Poleon Dep. p. 61, ln. 4-7).

5. Estes transports freight by tractor trailer for its customers between its terminals in the various states. ("Affidavit of Edland Poleon" hereinafter, "Poleon Dep. p. 86, ln. 7-23"). Estes does not own or manufacture the freight, nor does it sell any product. *See* (Poleon Dep. 103 p. ln. 2-9). Estes transports freight between states for its customers for a fee based on the weight of the freight. (Gerczak Aff. ¶ 3).

6. Both the shipper and the consignee are known before Estes takes custody of the freight. (Poleon Dep. p. 95, ln. 19-22).

7. Estes maintains control of the freight at all times between pick up from the shipper and delivery to the consignee. (Poleon Dep. p. 102, ln. 23 – p. 103, ln. 1). Estes does not provide warehouse or other storage services for freight. (Poleon Dep. p. 95, ln. 23 – p. 96, ln. 25).

8. From November 6, 2011 to Plaintiff's termination date, October 24, 2013, Plaintiff was employed as a dock worker, otherwise known as a loader, at the Estes Orlando terminal, where he worked on the inbound shift. (Poleon Dep. p. 54, ln. 22 – p. 57, ln. 2).

9. Plaintiff periodically trained dock workers as well, but his primary job function, even in the weeks he trained new dock workers, was to perform dock work on the inbound shift at the Orlando terminal. (Poleon Dep. p. 46, ln. 19 - p. 47, ln. 22; p. 48, ln. 1 – p. 49, ln. 25; p. 55, ln. 8-10).

10. On the inbound shift, freight is stripped (unloaded) off of trailers that are driven to and dropped at the Orlando terminal by Estes' over the road line haul drivers and the freight then is loaded onto different trailers for transportation to consignees around the Orlando terminal. (Poleon Dep. p. 55, ln. 21- p. 56, ln. 6).

11. Dock workers, including Plaintiff, performed the stripping and loading every day. (Poleon Dep. p. 55, ln. 21 - p. 56, ln. 6).

12. Each day that the Orlando terminal operated, it received inbound trailers from Charlotte and Greensboro, North Carolina; Atlanta, Marietta, and Athens, Georgia; Dallas, Texas, and Harrisburg, Pennsylvania. (Poleon Dep. p. 86, ln. 24 – p. 88, ln. 2). Those trailers delivered freight that originated in the aforementioned states and other states outside Florida. (Poleon Dep. p. 88, ln. 12-18). The freight that originated from states outside of Florida was the interstate freight that Plaintiff daily stripped and loaded onto local trailers for final delivery to the consignees. (Poleon Dep. p. 88, ln. 19 – p. 89 ln. 3) (*See* Exhibits 2 and 3 to Plaintiff's deposition (authenticated on pp 134-37) consisting of the shipping manifests for freight that arrived in Orlando on inbound trailers from states outside Florida and that Plaintiff unloaded and then loaded onto sep*ara*te trailers every day he worked as it continuously moved through interstate commerce.) (Poleon Dep. p. 134, ln. 14 – p. 137, ln. 15; p. 105, ln. 13-19); *see also* testimony at Poleon Dep. p. 88, ln. 9 – p. 90, ln. 4).

13. The Dock Supervisor, Mr. John Holding, assigned dock workers, including Plaintiff, to strip inbound trailers that have arrived with freight that originated out of state and was destined for deliver to consignees in and around the Orlando area. ("Affidavit of John Holding" hereinafter, "Holding Aff. ¶ 4). The dock workers, including Plaintiff, used the paperwork provided by Mr. Holding to locate the trailer they were assigned to strip, to identify

3

the particular items of freight that w*ere to b*e reloaded on trailers destined for regions around Orlando, and to then load the freight onto trailers in such a manner that it could be safely transported over the public highways. (Poleon Dep. p. 88, ln. 19 – p. 90, ln 22); ("Holding Aff. ¶ 4-5). Estes' drivers then delivered the freight using Estes' tractor-trailer equipment. (Poleon Dep. p. 55, ln. 21 – p. 56, ln. 3).

14. Plaintiff was not instructed where or how to load the freight. *See* (Poleon Dep. p. 67, ln. 4-17; p. 68, ln. 7-16).

15. Mr. Holding relied on Plaintiff and the other dock workers to use their own judgment and discretion to strip and safely load the freight. *See* (Poleon Dep. p. 67, ln. 4-17; p. 68, ln. 7-16).

16. In performing his dock work every day that he worked for Estes, Plaintiff exercised complete discretion in building safe, properly weighted and balanced loads so that Estes' drivers could transport the freight safely over the open road. (Poleon Dep. p. 77, ln. 24 – p. 78, ln. 12).

17. No one told Plaintiff how to load a trailer because he knew how to do it correctly. (Poleon Dep. p. 78, ln. 16-24; p. 92, ln. 8-11).

18. When loading trailers, Plaintiff was solely responsible for making sure that the freight was balanced, both front to back and side to side, and Plaintiff was solely responsible for making sure that the trailer was not over-weight. (Poleon Dep. p. 91, ln. 1-13). Plaintiff was an expert at this safety sensitive operation. (Poleon. Dep. p. 91, ln. 21 – p. 92, ln 4). It was something Plaintiff did every day that he worked for Estes between 2011 and 2013. (Poleon Dep. p. 92, ln. 5-7).

19. Plaintiff was not supervised because he had the skills and discretion to perform these functions. (Poleon Dep. p. 92, ln. 8-11).

20. The purpose of building a balanced and braced load is to ensure that the freight can be pulled on the highway safely. If it is not properly braced or balanced, the freight could cause an accident. (Poleon Dep. p. 50, ln. 7 – p. 51, ln. 2).

21. Plaintiff also recouped freight every day that he worked for Estes. Plaintiff was good at recouping. (Poleon Dep. p. 63, ln. 3-18).

22. Recouping is the process of restoring or securing freight, repacking items, and/or repackaging damaged freight sometimes by using shrink wrap or tape. The purpose of recouping is to secure freight for safe transport. The freight could not be transported safely prior to recouping. (Poleon Dep. p. 65, ln 10-19).

23. Unstable freight cannot be safely shipped until it is recouped. (Poleon Dep. p. 69, ln. 14-17).

24. Plaintiff not only recouped his own freight, but if there was a problematic load that other dock workers were handling, he recouped it so that it could be safely loaded onto a trailer. (Poleon Dep. p. 68, ln. 24 – p. 69, ln. 7).

25. Plaintiff recouped every day. (Poleon Dep. p. 69, ln. 11-13).

26. Plaintiff encountered inbound freight that needed to be recouped because it became unstable in transport. Plaintiff was responsible for spotting the freight that need to be recouped and, without being told what to do, he recouped the freight and loaded it onto trailers for delivery over the highway. (Poleon, Dep. p. 65, ln. 20-24; 66, L1 – p. 67, ln 8; p. 68. ln 2-23; *see also* p. 71, ln 2- p. 72, ln. 1).

27.     Plaintiff also walked down the dock to spot freight that needed to be strapped or that needed airbags to be deployed in order to make the freight safe for transport. (Poleon Dep. p. 67, ln. 9-17).

28.     Plaintiff used a banding machine to secure freight regularly, and used shrink wrap to recoup freight every day. (Poleon Dep. p. 70, ln. 2-16).

29.     Plaintiff also used a drill and saw to recoup freight for transport. (Poleon Dep. p. 70, ln. 17 – p. 71, ln. 1).

30.     Using his own judgment and discretion, Plaintiff performed a myriad of safety related functions every day and every week that he worked for Estes in the relevant period. On a daily basis, (or at least every week depending on which equipment referred to), Plaintiff used load bars, shrink wrap, a banding machine, pallets, airbags, and other means of securing freight in trailers so that the freight would not shift in transport. (Poleon Dep. p. 69, ln. 18 – p. 70, ln. 22; p. 76, ln. 2-23).

31.     On a daily basis, Plaintiff built a balanced load of freight in the trailer, (i.e., assured that the trailers were not off balance, overloaded or loaded too heavily on one side), and he was responsible for making those loading decisions. (Poleon Dep. p. 77, ln. 24 – p. 78, ln. 24; p. 133, ln. 7-20).

32.     On a daily basis, Plaintiff recouped freight or built pallets of freight and secured them with shrink wrap and other materials before loading them onto a trailer to ensure that the freight could be safely transported over the open road. (Poleon Dep. p. 70, ln. 11 – p. 72, ln. 2; p. 149, ln. 16 – p. 150, ln. 8).

33.     Plaintiff's experience, skill and training allowed him to build safe and balanced loads. (Poleon Dep. p. 39, ln. 1-6; p. 40, ln. 9 – p. 41, ln. 18; p. 139, ln. 11-24).

34. On a daily basis, Plaintiff personally decided in his best judgment where and how to load freight onto a trailer so as to build a safe and balanced load. (Poleon Dep. p. 148, ln. 19 – p. 149, ln. 11).

35. On a daily basis Plaintiff made his own decisions as to when and how to best brace freight, including when to use load bars, the banding machine, shrink wrap, or other means to secure freight. (Poleon Dep. p. 76, ln. 24 – p. 77, ln. 2; p. 78, ln. 3 – p. 79, ln. 25).

36. Plaintiff was also trained in the handling of hazardous materials. (Poleon Dep. p. 41, ln. 1-25).

37. Plaintiff loaded hazardous materials every week he worked for Estes, and he appropriately placarded and de-placarded trailers as needed to denote the shipment of hazardous materials. (Poleon Dep. p. 99, ln. 10 – p. 100, ln. 16).

38. Plaintiff was trained and personally responsible for safely loading and securing hazardous material according to Estes' and the U.S. Department of Transportation's requirements for the safe transportation of hazardous materials. (Poleon Dep. p. 39, ln. 1 – p. 41, ln. 25).

39. Plaintiff was responsible every day he worked for inspecting hazardous materials to make sure they had not been damaged and could be safely transported. (Poleon Dep. p. 39, ln. 1 – p. 41, ln. 25).

40. Plaintiff was responsible for identifying hazardous materials that were not properly identified on shipping documents and notifying his supervisor so that the hazard could be remedied. (Poleon Dep. p. 43, ln. 2-5, p. 91, ln. 10 – p. 93, ln. 22).

41. When Plaintiff loaded hazardous materials, he diagrammed the location of hazardous material on trailers he loaded every week for safety reasons, namely to inform fire

department employees where it was situated in case of an accident. (Poleon Dep. p. 93, ln. 18 – p. 94, ln. 1; p. 95, ln. 1-3).

42. No supervisor told Plaintiff how to load or handle or secure hazardous materials because he had the skill and discretion to do the job and the dock supervisor had no time to watch what every dock worker was doing. (Poleon Dep. p. 95, ln. 14-18).

43. Plaintiff's failure to fulfill his responsibilities to build a safe and secure load would create a dangerous condition on the open road. (Poleon Dep. p. 50, ln. 7-22, p. 66, ln. 11 – p. 67, ln. 17).

44. Plaintiff was not told by a supervisor how or where to load freight or to use the many tools at his disposal for securing freight for safe transportation over the road. (Poleon Dep. p. 67, ln. 2-17, p. 76, ln. 2 – p. 77, ln. 2).

45. A substantial, critical and primary function of Plaintiff's job as a dockworker was to ensure the safe and secure loading of freight so that it could be safely transported over the public roads and in interstate commerce. (Poleon Dep. p. 45, ln. 3-16; p. 54, ln. 22 – p. 57, ln. 22, p. 65, ln. 10 – p. 66, ln. 24).

46. At all times Plaintiff was employed by Estes, he was paid by the hour. (Poleon Dep. p. 108, ln. 2-24).

47. Plaintiff understood from the day he was hired that he would not be paid an overtime rate for hours worked over forty in a week. (Poleon Dep. p. 15, ln. 7-21, p. 125, ln. 23 - p. 126, ln. 1).

48. Plaintiff was never told by anyone employed by Estes that he was entitled to overtime; Plaintiff was always told that he was not entitled to overtime pay and would not be paid overtime pay. (Poleon Dep. p. 109, ln. 21 – p. 110, ln. 6; p. 163, ln. 8-11).

49. Plaintiff had no agreement or contract of any kind with Estes. (Poleon Dep. p. 158, ln. 23 – p. 159, ln. 1; p. 161, ln. 24 – p. 163, ln. 11).

50. Plaintiff was not an employee of Defendant Rhodes or Defendant Rubito. (Poleon Dep. p. 158, ln. 14 - 22).

51. Estes was Plaintiff's employer. *See* (Poleon Dep. p. 104, ln. 2-4; p. 158, ln. 14 - 22).

52. Plaintiff's employment with Estes ended on October 24, 2013. (Poleon Dep. Exhibit 1, P. 2).

Respectfully submitted, this the 15th day of April, 2016.

By: s/ David L. Woodard
David L. Woodard
N.C. State Bar. No. 19343
POYNER SPRUILL LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC  27602-1801
Telephone:  919.783.2854
Facsimile:  919.783.1075
dwoodard@poynerspruill.com

Cathy J. Beveridge
Florida Bar No. 831018
Buchanan Ingersoll & Rooney PC
SunTrust Financial Centre
401 E. Jackson Street, Suite 2400
Tampa, FL 33602
Telephone:  813-222-8180
Facsimile:  813-222-8189
Cathy.Beveridge@bipc.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that I have this day, electronically filed the foregoing ***Defendants' Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment*** with the Clerk of Court using the CM/ECF system and I have served the aforementioned document on Plaintiff by email and by placing a copy in the United States Mail to Plaintiff's record addressed as follows:

>Edland Poleon
>5532 Britan Drive
>Orlando, FL 32808
>*Pro Se Plaintiff*

This the 15th day of April, 2016.

By: s/ David L. Woodard
David L. Woodard
N.C. State Bar. No. 19343
POYNER SPRUILL LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: 919.783.2854
Facsimile: 919.783.1075
dwoodard@poynerspruill.com

ATTORNEY FOR DEFENDANTS